Argued and submitted November 4, decision of Court of Appeals reversed in part and judgment of circuit court affirmed December 4, 1992, reconsideration denied January 26, 1993

Gary W. TEENY
and Richard L. Teeny,
dba Teeny's Steel and Crane Erection,
*Plaintiffs,*

*v.*

HAERTL CONSTRUCTORS, INC.,
an Oregon corporation,
and Manhattan-Rose City Glass, Inc.,
an Oregon corporation,
*Defendants-Respondents,*

CAMERA WORLD COMPANY,
an Oregon corporation;
*Petitioner on Review,*

Chung Doo SHIN,
an individual,
*Defendant-Respondent,*

MARSHALL COMPANY CONSTRUCTION,
an assumed business name of
John H. Marshall,
*Defendant-Appellant,*

MICROFLECT, INC.,
an Oregon corporation,
dba Grating Specialties Division,
and Enterprise Fabricators Co., Inc.,
an Oregon corporation,
*Respondents on Review,*
*and*

Alfred E. AUS
and Esther W. Aus, husband and wife;
U.S. National Bank of Oregon,
a national banking association;
Drs. Goodman and Charrier, P.C.,
a professional corporation;
Knez Building Materials Company,
an Oregon corporation;
Don Earl, Michael Gardner and Michael Satran,
dba Western States Sheet Metal, Inc.;

CAB, Inc., dba Union Floor Company;
Parr Lumber Company, an Oregon corporation;
Michael Gardner, dba Sun Roofing;
Bachofner Electric, Inc., an Oregon corporation;
Landry's Commercial Floor Covering, Inc.,
an Oregon corporation;
Dan E. Ward, dba Willamette Painting Co.;
Overhead Door Company of Portland-Vancouver, Inc.,
an Oregon corporation,
dba Overhead Door Company of Portland, Inc.;
Asi Heating and Air Conditioning, Incorporated,
an Oregon corporation;
Modern Plumbing Company, an Oregon corporation;
Landco Enterprises, Inc., an Oregon corporation;
and James B. Johnston, dba Wood Hollow Cabinets,
*Defendants.*

(CC 8808-04655; CA A63888; SC S39122)

842 P2d 788

William Dickas, of Kell, Alterman & Runstein, Portland, filed the petition and argued the cause for petitioner on review.

Willam Day, Portland, filed the response and argued the cause for respondent on review Enterprise Fabricators Co., Inc.

GILLETTE, J.

## GILLETTE, J.

In this lien foreclosure case, several construction subcontractors involved in renovating a commercial building in downtown Portland sought to foreclose construction liens on the property after the general contractor had failed to pay them amounts due under their subcontracts. The property owner contested the liens. The trial court held, among other things, that the liens of two of the subcontractors – Enterprise Fabricators Co., Inc. (Enterprise), and Microflect, Inc. (Microflect) – were invalid, because neither subcontractor had given the property owner a notice of right to a lien pursuant to ORS 87.021, set out *infra*. The Court of Appeals reversed and remanded, holding in part that Enterprise and Microflect were exempt from the notice requirement under ORS 87.021(3)(b). *Teeny v. Haertl Constructors, Inc.*, 111 Or App 543, 826 P2d 1029 (1992). We allowed review and now reverse the Court of Appeals on this issue.[1]

In 1987 and 1988, Haertl Constructors, Inc. (Haertl), served as general contractor on a construction project to renovate part of a multi-story retail and office building in downtown Portland. In 1987, Haertl subcontracted with Enterprise to do custom steel fabrication for the project. Almost all of Enterprise's work occurred off-site at its shop, where Enterprise fabricated various items. Enterprise then delivered those items to the construction site for others to install. In addition to approximately 22 delivery trips, Enterprise's president, Mel Haldors, made approximately 19 other

---

[1] This action initially involved more than 20 parties. Some claims were resolved before trial; the judgment of the trial court disposed of all remaining claims. Three parties – Enterprise, Microflect, and Marshall Company Construction – appealed that judgment.

The Court of Appeals affirmed as to Marshall. *Teeny v. Haertl Constructors, Inc.*, 111 Or App 543, 826 P2d 1029 (1992). We denied Marshall's petition for review. 313 Or 628, 835 P2d 917 (1992).

As to Enterprise and Microflect, the Court of Appeals reversed the judgment, because it found that the trial court erred in voiding their liens. The trial court provided two reasons for voiding the liens: the first related to the notice of right to a lien; the second related to verification of the claim of lien. The Court of Appeals held that the trial court erred in its ruling on both grounds. *Teeny v. Haertl Constructors, Inc., supra*, 111 Or App at 547-49. No party sought review of the Court of Appeals' decision on the verification issue, and this court does not express any opinion on that issue. Only the notice issue is before this court. Because this court finds that the trial court was correct in voiding the liens on the notice issue, despite the Court of Appeals' reversal on the verification issue, remand is unnecessary.

trips to the construction site, where he took measurements and met with various people to work out problems related to Enterprise's fabrication tasks.

In May 1988, Microflect provided aluminum grating for the project under a subcontract with Haertl. John Robertson, a general manager at Microflect, spent four hours at the construction site taking measurements for the grating. The grating was then cut to size at Microflect's shop in Salem and delivered to the construction site by an independent trucking company.

In August 1988, Gary and Richard Teeny, who were also subcontractors on the project, filed this action, seeking recovery against Haertl for the amount due on their subcontract and also seeking to foreclose a construction lien on the property. All other subcontractors and the property owner were joined as defendants in the action. By counterclaim and cross-claim, Enterprise and Microflect each sought to recover against Haertl and to foreclose construction liens on the property.[2]

In January 1990, the trial court entered judgment in the action, ruling in part that the liens of Enterprise and Microflect were invalid, because neither subcontractor had provided the property owner a notice of right to a lien, as required by ORS 87.021. That statute provides, in part:

"(1) Except when material, equipment, services or labor described in ORS 87.010(1) * * * is furnished at the request of the owner, a person furnishing any materials, equipment, services or labor described in ORS 87.010(1) * * * for which a lien may be perfected under ORS 87.035 shall give a notice of right to a lien to the owner of the site. The notice of right to a lien may be given at any time during the

---

[2] Like the Teenys, Enterprise and Microflect sought to foreclose liens created under ORS 87.010(1), which provides:

"Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment to be used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner."

ORS 87.005(2) defines "construction" to include the "creation or making of an improvement, and alteration, partial construction and repairs done in and upon an improvement." ORS 87.005(5) defines "improvement" to include, among other things, "any building."

progress of the improvement, but the notice only protects the right to perfect a lien for material, equipment and labor or services provided after a date which is eight days, not including Saturdays, Sundays and other holidays as defined in ORS 187.010, before the notice is delivered or mailed. * * *

"* * * * *

"(3)(a)   Except as provided in paragraph (b) of this subsection, a lien created under ORS 87.010(1) * * * may be perfected under ORS 87.035 only to the extent that the notice required by subsection (1) of this section is given.

"(b)   A person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement * * * need not give the notice required by subsection (1) of this section in order to perfect a lien created under ORS 87.010. As used in this paragraph:

"(A)   'Commercial improvement' means any structure or building not used or intended to be used as a residential building, or other improvement to a site on which such a structure or building is to be located."

Enterprise and Microflect conceded that they had not provided the property owner with notices of right to a lien, and the trial court concluded that neither Enterprise nor Microflect fell within the exception of ORS 87.021(3)(b) for a person who "performs labor upon a commercial improvement or provides labor and material for a commercial improvement." It is this ruling that is at issue before us.

Enterprise and Microflect appealed the trial court judgment, arguing to the Court of Appeals that a person who provides material for a project after performing custom work on that material away from the construction site "provides labor and material for a commercial improvement" within the meaning of ORS 87.021(3)(b). In response, the property owner argued that only a person who labors on-site, either by installing material or by working on material at the construction site, "performs labor upon a commercial improvement or provides labor and material for a commercial improvement" within the statute's meaning. The Court of Appeals rejected the owner's argument, stating: "To agree with that conclusion, we would have to ignore the plain language of the statute. When the legislature uses different language for similar statutory provisions, we assume that it intended different meanings. * * * 'Performs labor upon' must mean

something different than 'provides labor * * * for.' " *Teeny v. Haertl Constructors, Inc., supra,* 111 Or App at 548. Consequently, the Court of Appeals held in favor of Enterprise and Microflect. We allowed review to determine the proper interpretation of ORS 87.021(3)(b).

In interpreting a statute, this court's duty is to discern the intent of the legislature. ORS 174.020; *Mattiza v. Foster,* 311 Or 1, 4, 803 P2d 723 (1990). "The inquiry begins with an examination of the language of the statute itself." *Id.* In this case, that examination is not dispositive. It is not self-evident that the legislature intended the phrase "[a] person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement" to include or to exclude a subcontractor like Enterprise or Microflect who customizes materials for a construction project off-site. Nor is it necessarily true, based on the statutory language alone, that the legislature intended the phrase "performs labor upon" to mean something different than "provides labor and material for." The difference in wording could be intended to describe completely different sets of circumstances, *e.g.,* contrasting situations in which labor alone was provided from those in which labor and material were provided, or, in spite of the difference, the legislature may have had a single set of circumstances in mind. Because the statutory wording does not provide a definitive indication of the legislature's intent in this case, it is appropriate to consider legislative history to determine whether the legislature intended to encompass subcontractors like Enterprise and Microflect within the protective bounds of ORS 87.021 (3)(b).

In 1915, the legislature first enacted the provision that eventually became ORS 87.021. Before that year, the statute that provided for construction liens (the precursor to ORS 87.010) stated, in part:

> "Every * * * person performing labor upon or furnishing material, or transporting or hauling any material of any kind to be used in the construction, alteration, or repair, either in whole or in part, of any building * * * shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner of the building * * * or his agent * * *."

Lord's Oregon Laws § 7416 (1910). In 1915, however, the legislature added to that statute the following notice requirement for suppliers of material:

> "*Providing further*, that every person furnishing material of any kind to be used in the construction, alteration or repair, either in whole or in part, of any building * * * shall, within ten days of the time such material is delivered to any person or contractor, deliver or mail to the owner or reputed owner of the property * * * a duplicate statement of all such material delivered * * *, and no materialman's lien shall be filed or enforced unless the provisions of this Act have been complied with."

Or Laws 1915, ch 185, § 1 (emphasis in original).

As enacted, that notice requirement posed a problem for persons supplying both material *and* labor to a construction project. The problem is exemplified in *Johnson v. Alm*, 121 Or 285, 254 P 803 (1927). There, a subcontracting painter involved in the construction of a house failed to provide delivery notice to the owner. The painter subsequently filed a claim of lien for the amount of his subcontract, $670. This single charge applied to both materials furnished by the painter and labor performed by the painter. The Supreme Court held that, although the claim for labor was lienable, the claim for materials was not lienable, because the painter had failed to provide the required delivery notice. Moreover, the court held that, because the painter's claim "included both lienable and nonlienable items, * * * joined together in a lumping charge without any segregation, the whole lien becomes void." *Id.* at 288; *see also Lakeview Drilling Co. v. Stark*, 210 Or 306, 314-15, 310 P2d 627 (1957) (similar holding).

This problem provided the impetus for an amendment to the notice requirement in 1967. It was this amendment that first introduced the provision that eventually became ORS 87.021(3)(b). In 1965, the pertinent statute stated, in part:

> "Any person furnishing any material or supplies to be used in the construction of an improvement shall, not later than seven days after the date of delivery to a contractor or agent of the material or supplies for which a lien may be claimed under ORS 87.010, deliver in person * * * or mail by

registered letter to the owner or reputed owner of the property * * * a notice in writing stating * * * that a lien may be claimed for all such material and supplies * * *. No materialmen's lien for material or supplies furnished to the contractor or the agent of any owner or reputed owner shall be enforced unless such notice is given."

ORS 87.020(1) (1965). In 1967, however, the legislature added a new subsection to the statute, which read: "A person who performs *labor* upon any improvement and in addition furnishes material used in the construction of that improvement need not give the notice required in subsection (1) of this section in order to acquire a lien under ORS 87.010." Or Laws 1967, ch 600, § 1 (codified as ORS 87.020(5) (1967)) (emphasis added).

To determine whether the legislature intended to encompass subcontractors like Enterprise and Microflect within the current version of ORS 87.021(3)(b), we must first determine whom the legislature intended to encompass within this 1967 amendment. The amendment originated as House Bill 1575, which was sponsored by Representative Howard at the request of the Oregon Council of Painting and Decorating Contractors of America. Hearings held before the House Committee on Planning and Development show that the bill was intended to address the problem raised by cases such as *Johnson v. Alm, supra.* Minutes, House Committee on Planning and Development, March 7, 1967, pp 4-5; April 18, 1967, p 2. Thus, the particular wording chosen by the legislature — "[a] person who performs labor upon any improvement and in addition furnishes material used in the construction of that improvement" — was specifically intended to apply to subcontractors, such as painters, who, as part of their work at a construction site, supply material that is incorporated into the site. There is no indication that the legislature meant the amendment to have any broader application. Given this history, it is clear that the phrase "labor upon any improvement" referred to labor *at the construction site.*

This court's inquiry does not end in 1967, however. In 1975, the construction lien law underwent significant revision. Or Laws 1975, ch 466. ORS 87.020(5), the delivery notice exception, became ORS 87.021(4). Nevertheless, with

the exception of two grammatical changes, the wording of the subsection remained unchanged. In 1981, however, ORS 87.021(4) became ORS 87.021(3)(b), and the wording at issue in this case was added.[3] Or Laws 1981, ch 757, § 3. Thus, we must examine the legislative history behind the 1981 amendments to determine the legislature's intent in enacting the exact phrase at issue here.

That history indicates that the purpose of the 1981 amendments, contained in House Bill 2856, was to increase the protection available to owners by expanding the notice requirement in ORS 87.021 to cover subcontractors supplying labor, as well as those supplying material. In its initial form, the bill did not differentiate between commercial and residential construction projects. However, at a hearing before the House Judiciary Committee's Subcommittee 2 on June 4, 1981, Representative Fawbush said that some interested parties had expressed concern regarding the application of the bill's revisions to commercial projects. Tape recording, House Committee on Judiciary, Subcommittee 2, June 4, 1981, Tape 440, Side B at 46-80. At that same hearing, a representative of the National Electrical Contractors Association testified that his organization wanted the bill to have residential application only. Tape recording, House Committee on Judiciary, Subcommittee 2, June 4, 1981, Tape 442, Side A at 175-96.

At the next hearing before the subcommittee, on June 11, 1981, an aide to Representative Fawbush presented an amended version of the bill, which included the text of ORS 87.021(3)(b) as it now reads. The aide said that the purpose of the new phrasing was to ensure that the expanded notice requirements applied only to residential projects, not commercial projects. Tape recording, House Committee on Judiciary, Subcommittee 2, June 11, 1981, Tape 465, Side A at 118-28; Exhibit F (proposed amendment). Neither the aide's testimony nor any other part of the legislative history suggests that the new phrasing was intended to have any other effect.

---

[3] It was in 1981 that "delivery notice" became "notice of the right to lien." In 1987, the notice was given its present title — "notice of right to a lien." Or Laws 1987, ch 662, § 1.

■ The foregoing legislative history of ORS 87.021(3)(b) shows that the legislature did not intend the phrase "provides labor and material for a commercial improvement" to have a different meaning than "performs labor upon a commercial improvement" with regard to where the labor is performed. At its inception in 1967, the original phrase, "labor upon any improvement," was intended to mean labor at the construction site. The phrase "labor * * * for a[n] * * * improvement," added in 1981, was intended to have the same meaning. The legislative history provides no support for the contrary argument that the legislature intended the word "for," in place of the word "upon," to carry any significance. Consequently, we hold that "[a] person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement," within the meaning of ORS 87.021(3)(b), is a person who labors at the site of the commercial improvement.

■ This conclusion requires us to address an additional argument made before the Court of Appeals. As an alternate ground for the application of ORS 87.021(3)(b) in the present case, Enterprise and Microflect argued that they provided on-site labor at the construction project by taking measurements at the site. This court's reading of ORS 87.021(3)(b) and its history do not support that argument.

As noted above, the original version of the notice requirement exception, enacted in 1967, was intended to apply to subcontractors, such as painters, who, as part of their work at a construction site, supply material that is incorporated into the site. Enterprise and Microflect do not fit that description. Each of them was a supplier of material who, incident to supplying material, sent an employee to the construction site at various times to take measurements. While it is not possible to delineate exactly where the line is drawn, we can say that such incidental contacts with the job site are not the kind of "labor" contemplated by the legislature when it originally enacted the notice requirement exception now contained in ORS 87.021(3)(b).[4]

Because, under the facts present here, neither Enterprise nor Microflect was "[a] person who performs

---

[4] The same is true of meeting with various persons regarding the fabrication of materials to be supplied for the site, which Enterprise's president did in this case.

labor upon a commercial improvement or provides labor and material for a commercial improvement" within the meaning of ORS 87.021(3)(b), neither subcontractor was exempt from the requirement of providing a notice of right to a lien to the property owner. Because neither provided the owner here with such a notice, the trial court was correct in ruling that the liens of Enterprise and Microflect were invalid.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court invalidating the liens of Enterprise and Microflect is affirmed.