Argued and submitted March 2, decision of the Court of Appeals affirmed, judgment of the circuit court reversed, and case remanded to the circuit court with instructions June 17, 1993

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# GERALD OSCAR PERSON,
*Respondent on Review.*

(CC 89102773; CA A67862; SC S39464)

853 P2d 813

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause and filed the response for respondent on review. With him on the response was Sally L. Avera, Public Defender.

GILLETTE, J.

Fadeley, J., concurred and filed an opinion.

Van Hoomissen, J., dissented and filed an opinion in which Carson, C. J., and Peterson, J., joined.

## GILLETTE, J.

In this criminal case, defendant moved to dismiss the charges against him on the ground that the state had failed to bring him to trial within 90 days of receipt of his speedy trial notice, as required by ORS 135.763(1), set out *infra*. The trial court denied the motion, finding that the continuance of the trial beyond the 90-day period had been "reasonable and fair." The Court of Appeals reversed on the ground that neither defendant nor the state had requested a continuance. *State v. Person*, 113 Or App 40, 831 P2d 700 (1992). We allowed review and now affirm the decision of the Court of Appeals.

On October 31, 1989, defendant was charged with a seven-count indictment in Linn County. Subsequently, he was imprisoned on unrelated charges in the Oregon State Correctional Institution. On January 30, 1990, the Linn County District Attorney received defendant's "Speedy Trial Notice," in which defendant requested trial on the Linn County charges within 90 days pursuant to ORS 135.760[1] and 135.763(1), discussed *infra*. At that time, trial already had been set for April 11, 1990, a date within the 90-day period.

On March 16, 1990, defendant's counsel moved for permission to withdraw from the case due to a conflict of interest. Following that motion, the district attorney communicated to court staff that the state would be ready for trial on April 11 and that the court should appoint a defense attorney who also could be prepared on that date. On March 26, the court allowed defendant's counsel to withdraw and issued an

---

[1] ORS 135.760 provides:

"(1) Any inmate in the custody of the Department of Corrections against whom there is pending at the time of commitment or against whom there is filed at any time during imprisonment, in any court of this state, an indictment, information or criminal complaint charging the inmate with the commission of a crime, may give written notice to the district attorney of the county in which the inmate is so charged requesting the district attorney to prosecute and bring the inmate to trial on the charge forthwith.

"(2) The notice provided for in subsection (1) of this section shall be signed by the inmate and set forth the place and term of imprisonment. A copy of the notice shall be sent to the court in which the inmate has been charged by indictment, information or complaint."

No issue is raised in this case concerning the requirement that the court be served.

order appointing new counsel for defendant on the following day. On that order, however, a notation of the April 11 trial date was lined through and the notation "Trial date needs to be reset" was inserted below, apparently by court staff. Similarly, a letter from the court to defendant's new counsel dated March 27, 1990, stated: "Trial — 4/11/90 at 9:30 a.m. (will be reset)."

Without a motion by either party, the court then rescheduled defendant's trial for July 25, 1990. On June 25, defendant moved to dismiss the indictment pursuant to ORS 135.765,[2] on the ground that he had not been brought to trial within 90 days of the date that the Linn County District Attorney received his speedy trial notice. The trial court denied the motion, concluding that the district attorney "did everything it could per the statute to bring the defendant to trial within the 90 days" and that "any fault in the case not going to trial on April 11" was that of defense counsel and the court staff. The court also concluded that "[t]he continuance of the April 11, 1990, trial was reasonable and fair to the defendant." Consequently, the trial went forward on July 25, and defendant was convicted of four of the seven counts against him.

On appeal from his convictions, defendant assigned as error the denial of his motion to dismiss. The Court of Appeals, sitting *in banc*, reversed. The court's decision turned on the interpretation of ORS 135.763, which states:

"(1) The district attorney, after receiving a notice requesting trial under ORS 135.760, shall, within 90 days of receipt of the notice, bring the inmate to trial upon the pending charge.

"(2) A continuance may be granted upon the request of the district attorney and with the consent of the inmate. The court shall grant any continuance with the consent of the defendant. The court may grant a continuance on motion of the district attorney for good cause shown. The fact of imprisonment is not good cause for purposes of this subsection."

---

[2] ORS 135.765 provides:

"On motion of the defendant or the counsel of the defendant, or on the own motion of the court, the court shall dismiss any criminal proceeding not brought to trial in accordance with ORS 135.763."

Regarding that statute, the court's six-member majority wrote:

"A court cannot grant a continuance pursuant to ORS 135.763(2) unless the defendant consents or the state requests one, for good cause shown. * * *

"Neither the district attorney nor the defendant requested a continuance. Therefore, under the express terms of ORS 135.763(2), the court did not have the authority to deny defendant's motion to dismiss and permit the case to go to trial."

*State v. Person, supra,* 113 Or App at 43.

Four dissenting judges disagreed with the majority's reading of ORS 135.763(2):

"Reading that statute to require the district attorney to move for a continuance even though the state is prepared to proceed to trial within the 90-day period produces an absurd result, because district attorneys have no direct control over court docketing. * * *

"* * * * *

"* * * There is evidence to support the trial court's finding that the district attorney did everything within his power to comply with defendant's request for a trial within the 90-day period. I would hold that the state's actions satisfied the requirements of ORS 135.763 and that defendant is not entitled to a dismissal of the indictment under the circumstances."

*Id.* at 46-47 (Edmonds, J., dissenting). We allowed review to address the proper interpretation of ORS 135.763.

■ As this court noted in *State v. Hunter,* 316 Or 192, 199-200, 850 P2d 366 (1993), once the district attorney receives an inmate's request for speedy trial under ORS 135.760 to 135.765, four scenarios are possible:

(1) The inmate is brought to trial within 90 days.

(2) The inmate is not brought to trial within 90 days because of one or more continuances of the trial granted in accordance with ORS 135.763(2).

(3) The inmate is not brought to trial within 90 days, but the inmate has waived his or her right to speedy trial under ORS 135.760 to 135.765.

(4) The inmate is not brought to trial within 90 days, but the delay is *not* the result of a continuance of the trial granted in accordance with ORS 135.763(2), and the inmate has *not* waived his right to speedy trial.

Only in the event of the fourth scenario does ORS 135.765 require dismissal. *Id.* at 200.

In this case, the Linn County District Attorney received defendant's speedy trial notice on January 30, 1990. Defendant's trial did not occur within 90 days of that date. The state argues, however, that, for purposes of ORS 135.763(1), the district attorney "brought the inmate to trial" within the 90 days because the trial court found that the district attorney "did everything [he] could * * * to bring the defendant to trial within the 90 days." According to the state, "[t]he district attorney did all he was required to do under the terms of the statute."

■ ■ "In interpreting a statute, this court's duty is to discern the intent of the legislature." *Teeny v. Haertl Constructors, Inc.*, 314 Or 688, 694, 842 P2d 788 (1992). We attempt to discern the legislature's intent by examination of both the text and the context of the statute. *Southern Pacific Trans. Co. v. Dept. of Rev.*, 316 Or 495, 498, 852 P2d 197 (1993) (citing *State v. Trenary*, 316 Or 172, 175, 850 P2d 356 (1993)). The text of the statutory provision itself "must always be the starting point in any interpretive endeavor" and is the best evidence of the legislature's intent. *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378 & n 4, 851 P2d 595 (1993) (citing *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991)).

■ ORS 135.763(1) states that *"[t]he district attorney*, after receiving a notice requesting trial under ORS 135.760, *shall*, within 90 days of receipt of the notice, *bring the inmate to trial* upon the pending charge." (Emphasis supplied.) By its terms, ORS 135.763(1) requires the district attorney to "bring the inmate to trial." Until the trial actually has commenced, the district attorney has not fulfilled that duty.

■ It follows that, because defendant was not "brought to trial" within 90 days of the receipt of his speedy trial notice, the trial court's denial of defendant's motion to dismiss was

correct only if either (1) one or more continuances of the trial were granted in accordance with ORS 135.763(2) or (2) defendant waived his right to speedy trial. No claim of waiver is involved here. Consequently, the issue in this case is whether any continuance of the trial in this case that carried the trial date beyond the 90-day period was granted in accordance with ORS 135.763(2).

■ As noted above, defendant's trial originally was scheduled for April 11, 1990, a date within 90 days of the district attorney's receipt of defendant's speedy trial notice. The trial then was rescheduled for a date beyond the 90-day period. As the state concedes, the district attorney did not move for this continuance and defendant did not consent to it. Thus, the issue in this case narrows down to whether a continuance granted without motion of the district attorney and without consent of the defendant nonetheless can be one granted in accordance with ORS 135.763(2).

ORS 135.763(2) provides:

"A continuance may be granted upon the request of the district attorney and with the consent of the inmate. The court shall grant any continuance with the consent of the defendant. The court may grant a continuance on motion of the district attorney for good cause shown. The fact of imprisonment is not good cause for purposes of this subsection."

While ORS 135.763(2) may not be a model of precision, we believe that the legislature's intended meaning may be determined from the text of the statute. Moreover, as will be discussed *infra*, an examination of the context of the statute yields the same result. The statute specifies when the trial court *shall* grant a continuance — "with the consent of the defendant" — and when the trial court *may* grant a continuance — "on motion of the district attorney for good cause shown." By its terms, ORS 135.763(2) neither requires *nor permits* the trial court to grant a continuance in any other situation.

Defendant did not consent to the continuance at issue here, and the district attorney did not move for a continuance. Thus, neither of the circumstances that permitted the granting of a continuance described in ORS 135.763(2) existed here. The state, however, would have this

court read into the statute a third, implicit circumstance — one that would permit a trial court to grant a continuance on its *own* motion for what the court finds to be good cause, without the defendant's consent. The state argues that, because of the trial court's "general authority [over] and responsibility to control the course of litigation," the trial court retains the inherent authority to continue a case on its own motion beyond the 90-day period without violating the inmate's speedy trial right under ORS 135.760 to 135.765.

We decline the state's (and the dissent's) invitation to add to the statute what the legislature did not include. *See* ORS 174.010 (it is not the function of a court that is construing a legislative measure "to insert what has been omitted, or to omit what has been inserted"). As shown above, ORS 135.763(2) expressly states not only when the trial court *shall* grant a continuance, but also when the trial court *may* grant a continuance. If the trial court could grant a continuance on its own motion without the defendant's consent based on some general authority arising outside the express language of ORS 135.763(2), the wording of the statute permitting the court to grant such a continuance "on motion of the district attorney" would be superfluous. To give meaning to that portion of ORS 135.763(2), the grant of permissive authority within the statute must be read to be exclusive.

Moreover, if, as the state argues, the legislature actually intended to allow for continuances based on the trial court's own motion, the legislature could have written ORS 135.763(2) to provide for such a procedure. ORS 135.765, the statute that implements ORS 135.763(2) by requiring mandatory dismissal of proceedings not brought to trial in accordance with that statute, provides for dismissal "[o]n motion of the defendant or the counsel of the defendant, *or on the own motion of the court.*" (Emphasis supplied.) Furthermore, the legislature in the general speedy trial statutes demonstrated its ability to enact an *express provision* granting the trial court own motion authority to continue cases for good cause when a defendant had not been brought to trial pursuant to the statutory requirements. ORS 135.750.

The legislature's choice expressly to grant to the trial court authority to exercise the court's "own motion" authority in the two statutes, ORS 135.765 and 135.750, while

making no mention of that authority in ORS 135.763(2) (which deals with the same topic), and the fact that ORS 135.765 was enacted as part of the same piece of legislation as ORS 135.763(2),[3] satisfies us that the legislature did not intend ORS 135.763(2) to encompass continuances on the court's own motion. *See Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986) (" 'Ordinarily, when the legislature includes an express provision in one statute but omits such a provision in another statute, it may be inferred that such an omission was deliberate.' ") (quoting *Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981)).

The state argues alternatively that an interpretation of ORS 135.763(2) excluding continuances on the trial court's own motion will lead to "absurd results." The state poses several hypothetical situations in which, for one reason or another, the trial cannot be held within the required 90-day period, but the district attorney opposes a continuance (because the state is prepared to go to trial), the defendant does not consent to one, and the trial court has no power to order one on its own, despite the presence of good cause. According to the state, "[i]t would be absurd to ascribe to the legislature a purpose to allow criminals to escape prosecution under these circumstances." The dissent offers other scenarios.

It is true that, under this court's interpretation of ORS 135.763(2), in cases like the present one (and at least some of those posed hypothetically by the state and by the dissent) a district attorney may have to move for a continuance (even though the state is prepared for trial without one) simply to avoid dismissal under ORS 135.765. We do not agree, however, that such a requirement is "absurd." One practical effect of requiring the district attorney to make a motion for a continuance whenever the defendant has not consented to a continuance is to allow the defendant an opportunity to argue to the court that good cause for the continuance has not been shown — an opportunity that the

---

[3] The original versions of ORS 135.763(2) and ORS 135.765 were enacted together. Or Laws 1955, ch 387, §§ 2-3.

defendant might lack if the court were to act on its own motion.[4]

Further, requiring a motion for continuance by the district attorney in circumstances like those of the present case is consistent with the mandate in ORS 135.763(1) that "[t]he *district attorney* * * * *shall*, within 90 days of receipt of the [speedy trial] notice, *bring the inmate to trial*." (Emphasis supplied.) If, for whatever reason, trial is not going to occur within the 90-day period, and the defendant has not waived his or her speedy trial right, it is consistent with the duty imposed by ORS 135.763(1) to require *the district attorney* either to obtain the defendant's consent to a continuance or to make a motion for a continuance based on good cause, even if the state is prepared for trial.

■ We hold that ORS 135.763(2) does not permit a trial court to grant a continuance of the trial beyond the 90-day period of ORS 135.763(1) on its own motion without the defendant's consent. Because that is exactly what happened in this case, we hold that defendant was not "brought to trial in accordance with ORS 135.763." Consequently, the trial court had no authority to deny defendant's motion to dismiss the indictment under ORS 135.765. The Court of Appeals majority was correct in so holding. The case must be remanded to the trial court with instructions to dismiss the indictment.[5]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed. The case is remanded to the circuit court with instructions to dismiss the indictment.

**FADELEY, J.,** concurring.

I concur in the opinion of the court. The statute means what it says. Its plain language should be enforced, not erased on some claim of convenience to courts.

---

[4] For example, in this case it appears that the trial was continued beyond the 90-day period by court staff without formal motion by either party and without notice to defendant. Thus, defendant was denied the opportunity to argue that good cause for the continuance did not exist.

[5] Defendant argues that this court should order dismissal with prejudice, while the state urges this court to order dismissal without prejudice. We express no opinion on that issue.

The statute places a duty on the district attorney to timely prosecute a case or dismiss that charge for the time being. The dissent instead would let a trial judge decide what is timely and what is not in disregard of the statute's express words. The trial judge's function is to rule on continuance issues under the statute, not to rule on some other basis that the words of the statute do not contemplate.

The words of the statute provide no support for the dissent's contention that imposing delays in bringing a case to trial — delays neither authorized by any statute nor requested by any party to the case delayed — "ensures that the rights of all parties are considered," 316 Or at 607.

**VAN HOOMISSEN, J.,** dissenting.

The issues in this criminal case concern (1) what is required by the directive in ORS 135.763(1),[1] that the district attorney shall "bring the inmate to trial," and (2), in the context of ORS 135.760 *et seq,* what is the authority of a trial court, on its own motion, to continue a criminal case for good cause?

The majority holds that ORS 135.763(2)[2] does not permit a trial court, on its own motion, to grant a continuance of a criminal trial beyond the 90-day period of ORS 135.763(1). 316 Or at 592. Accordingly, the majority reverses the circuit court's judgment and remands this case with instructions to dismiss the indictment.[3] I disagree and therefore dissent.

---

[1] ORS 135.763(1) provides:

"The district attorney, after receiving a notice requesting trial under ORS 135.760, shall, within 90 days of receipt of the notice, bring the inmate to trial upon the pending charge."

[2] ORS 135.763(2) provides:

"A continuance may be granted upon the request of the district attorney and with the consent of the inmate. The court shall grant any continuance with the consent of the defendant. The court may grant a continuance on motion of the district attorney for good cause shown. The fact of imprisonment is not good cause for the purposes of this subsection."

[3] ORS 135.765 provides:

"On motion of the defendant or the counsel of the defendant, or on the own motion of the court, the court shall dismiss any criminal proceeding not brought to trial in accordance with ORS 135.763."

Although ORS 135.765 does not address the question whether a dismissal is with or without prejudice, that question would appear to be answered by ORS 136.130 (order

The trial court found:

"The District Attorney's Office did everything it could per the statute to bring the defendant to trial within the 90 days.

"The original trial was set for April 11, 1990, and the State was prepared for trial on that date.

"The District Attorney for Linn County does not set the Court's calendar. It can let the Court know when cases need to be set for trial within the 90 days, but it cannot physically require the case to be scheduled.

"The case involving Mr. Person was set for trial on April 11, and a readiness conference was scheduled for April 2, 1990.

"On March 16, 1990, defendant's former attorney Mr. Kent Hickam asked to be relieved as counsel for the defendant for the trials scheduled April 11, 1990; the order relieving Mr. Hickam as attorney was signed on March 26, 1990, by Judge William O. Lewis.

"On March 26, 1990, Mr. Clark Willes was appointed as the new defendant's attorney in these cases.

"On April 2, 1990, the readiness conference which had previously been scheduled did not take place. There being no explanation in the Court's file, nor known to counsel for the defendant, nor the State why the conference was not scheduled. The written notice to Mr. Willes from the Court's scheduling clerk indicated that the trial set for April 11, 1990, would have to be reset.

"If there is any fault in this case not going to trial on April 11; it is with Mr. Hickam, Mr. Willes, and the Court staff.

"The Court determines that someone (that person unknown) decided it would be unfair to require the defendant to go to trial when his newly appointed attorney had only two weeks to prepare for the case.

"The Court is aware that the statute requires an express waiver of the 90 days by the defendant in order for the case not to have been tried within the time as required by ORS 135.763.

"The defendant was not consulted regarding the rescheduled trial date by either Mr. Hickam or Mr. Willes;

to dismiss felony not a bar to another action for the same crime "unless the court so directs").

and he did not consent to the rescheduling from April 11, 1990, nor any other continuance from that date of his trial.

"The Court finds there was no fault by the State of Oregon and the District Attorney's Office regarding the trial not being conducted on April 11, 1990.

"This change in the scheduled trial date from April 11, 1990, was created by ethical conflicts with Mr. Hickam and an essential State's witness Mr. Michael Hendricks, which matter was called to the attention of Mr. Hickam by the Deputy District Attorney assigned to this case.

"The continuance of the April 11, 1990, trial was reasonable and fair to the defendant based upon all the above information."

The trial court denied defendant's motion to dismiss the indictment.[4]

On appeal from his subsequent convictions, defendant assigned as error the denial of his motion to dismiss. The Court of Appeals, sitting *in banc*, reversed. *State v. Person*, 113 Or App 40, 44, 831 P2d 700 (1992). That court's decision turned on the interpretation of ORS 135.763(2). Regarding that statute, the court's six-member majority stated:

"A court cannot grant a continuance pursuant to ORS 135.763(2) unless the defendant consents or the state requests one, for good cause shown.

"Neither the district attorney nor the defendant requested a continuance. Therefore, under the express terms of ORS 135.763(2), the court did not have the authority to deny defendant's motion to dismiss and permit the case to go to trial." *State v. Person, supra*, 113 Or App at 43 (citations omitted).

Four dissenting judges disagreed, stating:

"Reading that statute to require the district attorney to move for a continuance even though the state is prepared to proceed to trial within the 90-day period produces an absurd result, because district attorneys have no direct control over court docketing. * * *

"* * * * *

---

[4] Defendant does not argue that the trial court lacked good cause to order a continuance, or that any delay prejudiced his defense. Because of additional continuances sought by defendant, his trial actually began on July 25, 1990.

"* * * There is evidence to support the trial court's finding that the district attorney did everything within his power to comply with defendant's request for a trial within the 90-day period. [We] would hold that the state's actions satisfied the requirements of ORS 135.763 and that defendant is not entitled to a dismissal of the indictment under the circumstances." *Id.* at 46-47 (Edmonds, J., dissenting).

I agree substantially with the analysis of the Court of Appeals dissenters.

The majority opinion concedes that ORS 135.763(2) is not a model of drafting clarity. I agree. For example, the first sentence in that subsection appears to say that the granting of a continuance requested by the district attorney and consented to by the "inmate" is discretionary with the court. The second sentence, however, states that the trial court shall grant any continuance with the consent of the "defendant."[5] That sentence would appear to make any continuance to which the defendant consents mandatory, *thus subsuming the first sentence.*[6] Reading that language literally, a trial court would be required to grant a continuance any time a defendant requested one. The potential result of that interpretation, however, would be that, by simply asking for a continuance each time the case was set for trial, a defendant could prevent the case from ever coming to trial. Finally, the third sentence provides that the granting of a district attorney's motion for a continuance based on good cause also is discretionary, regardless of the defendant's consent. That sentence appears to conflict with the second sentence, which provides that the court "shall" grant any continuance with the consent of the defendant.

Notwithstanding the statute's obvious ambiguity, the majority confidently concludes that the legislature's intended meaning may be determined "from the words of the

[5] There is no explanation in the legislative history for the legislature's use of the word "inmate" in the first sentence of ORS 135.763(2), and then its use of the word "defendant" in the second sentence of that statute.

[6] The district attorney particularly wanted this case to be tried on April 11, because he had some hard-to-locate, out-of-state witnesses under subpoena for that date. Regardless of the circumstances, however, unless the district attorney requested a continuance for good cause, the majority would absolutely deny the court any discretion to continue a trial beyond the 90-day period, unless the defendant consented. 316 Or at 592.

statute." For my part, that conclusion is a leap of faith that I am not prepared to make. Rather, I conclude that ORS 135.763(2) was never intended to preclude a trial court, on its own motion, from continuing a case for good cause. ORS 135.763(2) simply does not purport to address a continuance initiated by the trial court, on its own motion, for good cause. The majority points to nothing in the statute's legislative history that remotely suggests that the legislature even considered the question presented by these facts.

The majority would require the district attorney to move for a continuance in these circumstances to avoid a dismissal under ORS 135.765. The majority postulates that one practical effect of requiring the district attorney to make such a motion is to allow a defendant an opportunity to argue to the trial court that good cause for the continuance has not been shown — an opportunity that the defendant "might lack" if the court were to act on its own motion. Defendant, however, has never made that argument in this case; nor has he ever argued that he was precluded from responding to the notices of a continuance sent to his counsel by the trial court.

Nor does the majority explain why it suddenly becomes the district attorney's duty to bring a defendant's speedy trial concerns to the trial court's attention when, as is undisputed in this case, both of defendant's lawyers knew about the circumstances that prompted the trial court to order a continuance. As noted by the majority, on March 26 the trial court allowed defendant's original counsel to withdraw and it issued an order appointing new counsel for defendant the following day. On that order, however, a notation of the April 11 trial date was lined through and the notation "Trial date needs to be reset" was inserted. Similarly, a March 27 letter from the court to defendant's new counsel indicated "Trial — 4/11/90 at 9:30 a.m. (will be reset)."

ORS 135.763(2) does not explicitly allow or preclude continuances initiated by the court for good cause. Yet, for the majority, regardless of the circumstances, the result is automatic. I disagree. A statutory provision addressing continuances in some circumstances does not necessarily mean that a continuance is prohibited in other circumstances. Stated differently, there is nothing in the language of ORS

135.763(2) or in that statute's legislative history that suggests that the procedures in the statute were meant by the legislature to be exclusive.

The majority focuses its inquiry on the text of ORS 135.763 in determining the legislature's intent, although it also permits itself the occasional foray into that statute's context as well (*e.g.*, by comparing ORS 135.763 with ORS 135.765, 316 Or at 592), when it serves the majority's purpose. This focus on text to the virtual exclusion of context is not appropriate and is inconsistent with this court's established approach to statutory interpretation.

Although the text of the statutory provision itself "must always be the starting point in any interpretive endeavor" and is the best evidence of the legislature's intent, *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378 & n 4, 851 P2d 595 (1993), (citing *State ex rel Juv. Dept. v. Ashely*, 312 Or 169, 174, 818 P2d 1270 (1991)), we attempt to discern the legislature's intent by examination of both the text and the context of the statute. *Southern Pacific Trans. Co. v. Dept. of Rev.*, 316 Or 495, 498, 852 P2d 197 (1993) (citing *State v. Trenary*, 316 Or 172, 175, 850 P2d 356 (1993)). In considering context, this court considers other provisions of the same statute and other statutes on the same subject. *Ibid.* Only if the text and context together do not divulge the legislature's intent do we then look to legislative history. *Ibid.*

Generally, the decision whether to grant any continuance is within the sound discretion of the trial court. *State v. Wolfer*, 241 Or 15, 17, 403 P2d 715 (1965) (a motion for a continuance is addressed to the sound discretion of the trial court and its ruling should only be disturbed for an abuse of discretion); *see Ungar v. Sarafite*, 376 US 575, 589-90, 84 S Ct 841, 11 L Ed 2d 921 (1964) (the matter of a continuance is traditionally within the discretion of the trial judge). In *State v. Ellison*, 209 Or 672, 679, 307 P2d 1050 (1957), this court stated:

> "The condition of a trial court's docket is peculiarly a matter within the knowledge of the trial judge, and, where no facts are before us, we must presume that the court's action was based on sufficient reason, including his own knowledge of the state of his docket."

The power of a trial court to control its docket is part of the court's more general authority and responsibility to control the course of litigation:

> "Courts have management and legal responsibility 'for the pace of litigation, actively monitoring or directing the scheduling of events in the life of a case.' *Attacking Litigation Costs and Delay*, Final Report of the Action Commission to Reduce Court Costs and Delay, American Bar Association 7-8 (1984). 'The court, from the outset, must take and maintain control over each case.' *Id.* at 8." *State v. Dykast*, 300 Or 368, 373, 712 P2d 79 (1985).

> " 'Successful judicial caseflow management must contain several elements. The court, from the outset, must take and maintain control over each case. The sequence of events in a case must be scheduled within short time periods of each other to minimize the time spent relearning the case and to sustain a sense of urgency in the participants. At the same time, the court's calendaring practices must reasonably accommodate the attorneys' scheduling needs for adequate case preparation. Finally, the court must keep to its schedule so that everyone knows the scheduled court events will actually happen on time (See Friesen, [*Cures for Court Congestion*, 23 The Judges' Journal 4] (1984).' *Attacking Litigation Costs and Delay*, Final Report of the Action Commission to Reduce Court Costs and Delay, American Bar Association 8 (1984)." *Id.* at 373 n 4.[7]

Because trial courts normally have the authority and duty to control all aspects of the scheduling of cases, the question here is whether, by the enactment of ORS 135.763(2), the legislature intended to deny trial courts such

---

[7] As the Court of Appeals observed in *State v. Page*, 18 Or App 109, 118, 523 P2d 1291 (1974):

"Unless reasonable latitude is allowed the trial court in granting or denying a continuance, the criminal process could be made to operate at the whim of an accused."

For at least 25 years, there has been a concerted effort in this state to make the management of judicial business the direct responsibility of courts and their court administrators. Today, all judicial business in Oregon is the direct responsibility of the Chief Justice who, working with the presiding trial court judges, the state court administrator, and local court administrators, manages this state's courts and all the judicial business that they process.

The American Bar Association Standards Relating to Speedy Trial (1967), at 1.2, recommend that "Control over the trial calendar should be vested in the court." That has been the practice in Oregon for decades and, in furtherance of that practice, the Chief Justice has adopted rules controlling trial calendars. UTCR 7.010.

control in the context of cases where delay is necessitated by "good cause," *e.g.*, change of counsel or illness of trial judge or counsel, but the district attorney opposes a continuance (or does not ask for one) and the defendant does not consent. I agree with the state: there simply is no reason to believe that the legislature intended to deprive a trial court of the discretionary power to order a continuance on its own motion for good cause shown.

In interpreting a statute, the intention of the legislature is to be pursued if possible. ORS 174.020; *State v. Carrillo*, 311 Or 61, 65, 804 P2d 1161 (1991). This court has stated that a statute should not be construed so as to ascribe to the legislature the intent to produce an unreasonable or absurd result. *State v. Linthwaite*, 295 Or 162, 179, 665 P2d 863 (1983).[8] Our responsibility is to determine what the legislature intended and to ensure that the statute is interpreted both in accordance with that intent and in a manner that does not lead to unreasonable or absurd results.

The legislative history of this statutory scheme provides virtually no guidance on the question presented by this case.[9] The 1955 Senate and House Journal shows that the legislation was sponsored by Senator Francis at the request of the State Board of Parole and Probation. The original bill file contains only one version of SB 412, showing no alterations during the session. *See State v. Gardner*, 233 Or 252, 260-61, 377 P2d 919 (1963) ("neither is there available any legislative history which might throw light on the purpose intended to be accomplished by the enactment of [*former* ORS 134.510 to 134.530]); *State v. Person, supra*, 113 Or App at 46 (Edmonds, J., dissenting) (discussing legislative history of statute). The only mention of SB 412 in the minutes of the

---

[8] In addition, statutes should not be interpreted in a manner that needlessly invites a constitutional challenge. Although the state does not argue it in this case, the majority's interpretation of the statute divesting the trial court of its authority to control its docket raises questions under Article III, section 1, of the Oregon Constitution (separation of powers). *See* 41 Op Atty Gen 382 (Or 1981) (opining that ORS 1.050, requiring trial courts to decide cases within three months after submission, with certain exceptions, violates Article III, section 1). On the other hand, the dissent's interpretation avoids any constitutional concerns.

[9] The predecessor statutes to ORS 135.760 *et seq, former* ORS 134.510 *et seq,* were enacted in 1955. Or Laws 1955, ch 387, §§ 2-3. The wording, however, has remained the same (except for a 1972 technical amendment, Or Laws 1973, ch 836, §§ 208-10, which is not relevant here).

Senate Judiciary Committee is the following: "Senator McMinimee moved that SB 412 be reported out do pass. Senator Johnson seconded the motion which carried unanimously. (Senator Francis to take on floor of Senate)." Minutes, Senate Judiciary Committee, April 2, 1955. The House Judiciary Committee minutes, quoted in part in Judge Edmonds' dissent in the Court of Appeals, state:

> "*Senate Bill 412*
>
> "Senator Francis spoke on this bill which makes provisions for prosecution of person imprisoned for crimes who are charged with the commission of other crimes. The inmate could request the District Attorney to make prosecution for such other crimes so that upon parole he will have a clean record. Sen. Francis stated the Parole Board felt this would be helpful to person being released from a correctional institution. Rep. Overhulse moved the bill 'do pass,' which motion carried." Minutes, House Judiciary Committee, April 18, 1955.[10]

In view of the fact that the legislation was introduced by Senator Francis at the request of the Board of Parole and Probation, I believe it would be highly unlikely that the legislature would intend to strip trial courts of their traditional authority to control their own dockets without so much as a word of legislative history to indicate that such was its intent. Moreover, the fact that the legislative history is silent about any opposition from judges, prosecutors, and law enforcement agencies to such a radical departure from longstanding court practice should be sufficient to convince any person familiar with speedy trial policy that the legislature had no such intent.

Turning to general legislative purposes proves more helpful. The constitutional and statutory "speedy trial" provisions aim to prevent excessive pretrial incarceration, to limit the possibility that the defense will be impaired, and to

---

[10] The *policy* behind this statute is not questioned. What is questioned is the majority's interpretation of the statute that results in a radical change in prior procedural law without a word of legislative history to suggest that such a result was intended, or that the legislature intended to make the procedure under ORS 135.763(2) completely different from the procedure under every other Oregon speedy trial statute. This offends two rules of construction: First, courts should not assume that the legislature intended to dramatically change the law when the legislative history does not suggest such an intent and, second, an ambiguous statute should be read in context to discern legislative intent.

limit anxiety and concern of the defendant. *State v. Dykast, supra*, 300 Or at 378; *see also State v. Mende*, 304 Or 18, 22, 741 P2d 496 (1987) (same).

In *State v. Jackson*, 228 Or 371, 377-78, 365 P2d 294 (1961), this court stated:

> "The Constitution of Oregon provides in Article I, § 10, that 'justice shall be administered * * * without delay.' This guarantee to the citizen of a trial without delay is equated to the right to a speedy trial. In *State v. Harris*, 101 Or 410, 415, 200 P 926, we said:
>
>> " 'The constitutional provision for a speedy trial was not intended to provide a loophole for the escape of one accused of the commission of an offense without trial when the same is had within a reasonable time.'
>
> "See, also, *State of Oregon v. Kuhnhausen*, 201 Or 478, 513, 266 P2d 698, 272 P2d 225; *State v. Breaw*, 45 Or 586, 588, 78 P 896.
>
> "It follows that the statute and the constitutional provision have substantially the same meaning and, therefore, that the tests heretofore announced by this court which are to be applied in determining whether an accused has been deprived of his right to a speedy trial under the constitution are likewise the tests under the statute. These tests have been stated many times by this court, most recently in *State v. Dodson*, [226 Or 458, 360 P2d 782 (1961)]. In the able opinion of Mr. Justice Brand in *State v. Kuhnhausen, supra*, 201 Or at 513, it was said:
>
>> " '* * * Wholly apart from the statute, the constitutional right of an accused person to a speedy trial contemplates a trial conducted according to fixed rules, regulations, and proceedings at law, free from vexatious, capricious, and oppressive delays. The right is consistent with delays, and, in the final analysis, whether such a speedy trial has been afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion * * *.' "[11]

---

[11] In theory, at least, the right to a speedy trial may be said to have been recognized at common law in very early times. *See State v. Clark*, 86 Or 464, 470-71, 168 P 944 (1917) (Oregon's constitution and statutes guarantee right to a speedy trial). Likewise, a trial court's authority to grant a continuance for good cause is of ancient origin.

This court has held that the different statutory speedy trial provisions should be construed similarly. *See Bevel v. Gladden*, 232 Or 578, 582, 376 P2d 117 (1962) (where difference was in procedure rather than principle, statutes were construed similarly). There is no reason to believe that the legislative purposes behind the enactment of ORS 135.760 *et seq* differ from those embodied in this state's other speedy trial provisions.[12]

In 1969, the legislature enacted the "Interstate Agreement On Detainers." Or Laws 1969, ch 362. That legislation, now found in ORS 135.775, provides in part:

> "In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, *but for good cause shown in open court*, the prisoner or the counsel of the prisoner being present, *the court* having jurisdiction of the matter *may grant any necessary or reasonable continuance.*" ORS 135.775, Article IV(c) (emphasis added).

ORS 135.763 had been Oregon law for more than a decade before the Interstate Agreement on Detainers was enacted. To me, it does not seem reasonable to believe, without saying a word about it, that the 1969 legislature intended to establish a *different* procedure *vis-a-vis* court-initiated continuances for *out-of-state* inmates than it had established for *in-state* inmates.[13] The Interstate Agreement On Detainers, ORS 135.775, simply states what the legislature assumed was already the practice when an *in-state* inmate was involved. I conclude that the legislature intended that the "speedy trial" provisions of state law should be the same for in-state and out-of-state inmates.[14]

---

[12] *See, e.g.,* ORS 135.010 (arraignment must be held within 36 hours except for good cause shown or at defendant's request if in custody); ORS 135.745 (dismissal for delay in finding indictment or filing information, unless good cause shown); ORS 135.747 (court shall dismiss charge unless defendant is brought to trial within a "reasonable period of time"); ORS 135.750 (court may continue action if "sufficient reason" shown); ORS 135.775 (court may grant any necessary or reasonable continuance for good cause); ORS 136.070 (postponement of trial permitted for "sufficient cause shown").

[13] The legislative history of ORS 135.775 (Interstate Agreement on Detainers) does not suggest that the legislature ever recognized, much less intended, that the procedure for in-state and out-of-state inmates would be different.

[14] I suspect that, as a matter of policy, the legislature could determine that there were valid reasons why in-state and out-of-state inmates should be treated

The general legislative purposes behind speedy trial provisions are served by interpreting ORS 135.760 *et seq* to allow continuances that are initiated by the trial court for good cause. The statutory directive in ORS 135.763 authorizing some continuances demonstrates that the legislature recognized that circumstances could arise in which the 90-day time limit should be extended. The legislature's failure to address all possible circumstances in which a continuance ordered by the trial court for good cause might be proper is not inconsistent with the general legislative recognition that continuances may occur for other reasons of particular interest to the parties. *See, e.g.,* ORS 135.750 (providing for continuances on trial court's own motion beyond the general speedy trial deadlines for "sufficient reason").

In *State v. Vawter*, 236 Or 85, 96, 386 P2d 915 (1963), addressing the constitutional speedy trial provisions, this court stated:

> "Necessarily, there will always be delay greater or less in bringing an accused to trial. Legislation recognizes that a delay of 60 days in indicting a defendant who has been held to answer is reasonable. [*Former*] ORS 134.110. Other reasonable delays, about which the trial judge knows and this court does not, frequently occur."[15]

In ORS 135.763(2), the legislature provided a procedure for granting continuances in three circumstances. Nothing in ORS 135.763(2) or in the general legislative purpose behind any of our speedy trial provisions suggests that the legislature intended that those procedures were intended to be exclusive or that the legislature intended to divest trial courts totally of control over the trial process in other circumstances.

That no provision was made for trial court-initiated continuances does not support an inference that the legislature intended to abolish trial court authority to manage its

differently. However, I would expect that, if the legislature made such a policy decision, it would explain its reasons for doing so in the statute's legislative history, and the statutory language would unambiguously so direct.

[15] "Reasonableness" is a question of fact that must be decided in the light of the circumstances of each particular case. *State v. Harrison*, 253 Or 489, 492, 455 P2d 613 (1969).

dockets. *Cf. State ex rel Juv. Dept. v. Geist*, 310 Or 176, 185, 796 P2d 1193 (1990) (without an explicit statutory provision, court fashioned appropriate procedure for addressing adequacy of counsel in parental termination hearings).[16] Instead, the legislature may have assumed that a trial court always has the authority to continue a case for good cause and that no specific provision was required for the exercise of that authority.

Interpreting ORS 135.763 to allow the trial court on its own motion to continue a case beyond the 90-day period for good cause is consistent with the legislature's recognition that some continuances are sanctioned; nor does such an interpretation contravene any of the general legislative purposes sought to be advanced by statutory or constitutional speedy trial provisions. Further, such an interpretation, which recognizes the necessary role of the trial court in the criminal justice system, is consistent with the general authority and responsibility of trial courts to control the progress of cases and ensures that the rights of all the parties are considered. Indeed, a copy of the speedy trial notice must be sent to the trial court, ORS 135.760(2), suggesting that the legislature did not intend that the trial court should be a mere uninvolved bystander in the process.

By interpreting ORS 135.763(2) to bar continuances initiated by the trial court for good cause, the majority has ignored the reality of the trial court's role in the criminal trial process. Both by statute and by rule, trial courts are given substantial authority and discretion in

---

[16] In *State ex rel Juv. Dept. v. Geist*, 97 Or App 10, 17-18, 775 P2d 843 (1989), the Court of Appeals determined that, because the legislature had not created a procedure and forum for determining whether a parent had received adequate counsel in a termination proceeding, it could not address the adequacy of counsel on direct appeal. This court disagreed, stating:

"We reject the notion that, although mandating the appointment of trial counsel for indigent parents, the legislature intended that no procedure be available to vindicate that statutory right. *Absent an express prohibition against challenges of adequacy of appointed counsel, we do not interpret the legislature's omission of an express procedure as evidencing any legislative intent to preclude such challenges.* Absent an express legislative procedure for vindicating the statutory right to adequate counsel, this court may fashion an appropriate procedure." *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 185, 796 P2d 1193 (1990) (emphasis added; footnote omitted).

controlling their dockets. *See* ORS 1.010, 1.175, 3.065; UTCR 1.100, 7.010.[17]

Although the district attorney has the statutory authority to control some aspects of the progress of a criminal case, the reality is that the trial court ultimately has the sole authority to set a case for trial. The district attorney cannot grant or deny continuances. In construing ORS 135.763(2), this court is not obliged to ignore the day-to-day realities of trial court operation. To require the district attorney to move for a continuance and to demonstrate good cause for delay when the district attorney, in fact, opposes the delay, is to turn normal trial court procedure on its head. Focusing on the statutory provision governing some continuances, the majority has ignored the broader effect of its ruling.

The majority poses four scenarios to illustrate how the statute should operate. 316 Or at 589-90. I have no quarrel with three of the majority's scenarios: (1) the district attorney requests a continuance and the defendant consents; (2) the defendant requests a continuance; and (3) the district attorney requests a continuance based on good cause. The majority concludes that those three scenarios are the exclusive procedure to obtain a continuance. I disagree.

---

[17] Those provisions generally allow the trial court to control the progress of criminal cases.

ORS 1.010(3) gives the trial court authority to "provide for the orderly conduct of proceedings before it or its officers."

ORS 1.175, which addresses docket priorities, states that in arranging its docket the trial court may take into account "[t]he court's efficient administration of its caseload, giving due consideration to the interests sought to be furthered by according docket priorities to certain actions or proceedings before the court."

ORS 3.065(3) provides:

"The presiding judge, to facilitate exercise of administrative authority and supervision over the court and consistent with applicable provisions of law and the Oregon Rules of Civil Procedure, may:

"(a) Apportion and otherwise regulate the disposition of the judicial business of the court.

"(b) Make rules, issue orders and take other action appropriate to that exercise."

UTCR 1.100, which provides that "[r]elief from application of [the UTCR] in an individual case may be given by a judge on good cause shown if necessary to prevent hardship or injustice."

UTCR 7.010 addresses case management and calendaring.

Other scenarios demonstrate why the majority's result is untenable:

(1)   The state is ready for trial on the 90th day, but the only available judge is ill, and the judge continues the case.

(2)   The state is ready for trial on the 90th day, the defendant is ill but does not consent to a continuance, and the judge continues the case.

(3)   A defendant has several complex charges pending that cannot be joined for trial. The state is ready for trial. Although the state opposes a continuance and the defendant refuses to consent, because of limited judicial resources, the judge continues one of the trials beyond the 90-day period.

(4)   A defendant is charged in a multi-count indictment. Trial is expected to take 10 to 15 days. The state is ready for trial on the 90th day. A defense of incapacity due to immaturity, ORS 161.290, is tendered by defendant. On the morning of trial, defendant does not consent to a continuance, and the district attorney does not request one. Based on the circumstances, the judge concludes that the defense may be well- taken and continues case for two days to verify defendant's age.

(5)   A defendant is charged with aggravated murder. The state is ready for trial on the 90th day. On the morning of trial, defendant tenders a defense of mental disease or defect. ORS 161.295. The trial court concludes that defendant had just cause for failing to file the notice required by ORS 161.309. The district attorney does not request a continuance, and the defendant does not consent to a continuance. The judge, nevertheless, grants a continuance to allow the state to obtain an independent psychiatric evaluation.

(6)   The state is ready for trial on the 90th day. On the morning of trial, the defendant files a motion to suppress the state's evidence. The trial court holds a pre-trial hearing and allows defendant's motion. The state appeals. ORS 157.020(2)(c). Sixty days later, the Court of Appeals reverses and remands the case for trial.

Under any of those circumstances, I believe that it would be absurd to ascribe to the legislature an intent to deprive the trial court of discretionary power to order a continuance for good cause. Although the majority has interpreted correctly the procedure provided by the legislature for addressing continuances sought *by the parties*, it has incorrectly concluded that no other continuances are permitted.

I would hold that the trial court correctly denied defendant's motion to dismiss the indictment. ORS 135.763(1) directs only that the district attorney "bring the inmate to trial upon the pending charge." The trial court found that "[t]he District Attorney's Office did everything it could * * * to bring the defendant to trial within the 90 days." Defendant does not dispute that finding, which is supported by the record. I would conclude that the district attorney did all that he was required under ORS 135.763(1).

ORS 135.760 *et seq* were intended to address relationships between defendants and district attorneys. There is no reason to believe those statutes were intended to abolish the authority of trial courts to manage their own dockets. *See State v. Wolfer, supra; State v. Dykast, supra.*

I would hold that the trial court did not err in denying defendant's motion to dismiss the indictment. I therefore would affirm the judgment of the trial court.[18]

Carson, C. J., and Peterson, J., join in this opinion.

---

[18] The legislature should consider amending ORS 135.763(2) to permit a trial court to grant a continuance on its own motion for good cause shown. Such an amendment would harmonize ORS 135.763(2) with every other Oregon speedy trial statute, all of which recognize a trial court's discretionary power to grant a continuance for good cause shown, subject to appellate review for an abuse of discretion.